Honorable Brian A. Tsuchida

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JERRY CHRIS VAN DYKE,<br>a/k/a JERRY WITTEN,<br><br>Defendant. | CASE NO. MJ21-627<br><br>**COMPLAINT FOR VIOLATION**<br><br>Title 18, United States Code,<br>Sections 1159(a) and 2 |

BEFORE the Honorable Brian A. Tsuchida, United States Magistrate Judge, Seattle, Washington.

The undersigned complainant, being duly sworn, states:

### COUNT 1
### Misrepresentation of Indian Produced Goods and Products

On or about April 16, 2019, in King County, within the Western District of Washington, JERRY CHRIS VAN DYKE, a/k/a JERRY WITTEN (VAN DYKE), did aid and abet the display and offer for sale, and sale of goods for more than $1,000.00, specifically, carved pendants, in a manner that falsely suggested they were Indian produced, an Indian product, and the product of a particular Indian and Indian tribe, when in truth and fact, as VAN DYKE well knew, the goods were not Indian produced, an Indian product, and the product of a particular Indian and Indian tribe.

All in violation of Title 18, United States Code, Sections 1159(a) and 2.

COMPLAINT - 1
*United States v. Van Dyke*
USAO No. 2019R00667

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**COUNT 2**
**Misrepresentation of Indian Produced Goods and Products**

On or about November 22, 2019, in King County, within the Western District of Washington, JERRY CHRIS VAN DYKE, a/k/a JERRY WITTEN (VAN DYKE), did aid and abet the display and offer for sale, and sale of goods for more than $1,000.00, specifically, carved pendants, in a manner that falsely suggested they were Indian produced, an Indian product, and the product of a particular Indian and Indian tribe, when in truth and fact, as VAN DYKE well knew, the goods were not Indian produced, an Indian product, and the product of a particular Indian and Indian tribe.

All in violation of Title 18, United States Code, Sections 1159(a) and 2.

**AFFIANT'S BACKGROUND**

1. I, Sean W. Hyrons, am a Special Agent with the United States Department of Interior, United States Fish and Wildlife Service, Office of Law Enforcement (USFWS) in Albuquerque, New Mexico. I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18 of the United States Code.

2. I have worked for the USFWS as an agent since approximately November 2018. I also worked as an agent for the Bureau of Land Management, Office of Law Enforcement and Security, beginning in January 2012. Prior to working as an agent, I was a Bureau of Land Management Law Enforcement Ranger for approximately three years, a United States Forest Service Law Enforcement Officer for approximately eight years, and a City of Orlando Police Officer for approximately two years. I have received and completed formal training that included a twelve-week Criminal Investigator training program in Glynco, Georgia. I have training and experience in the investigation of crimes relating to the theft, fraud, trafficking, and destruction of natural and cultural

COMPLAINT - 2
*United States v. Van Dyke*
USAO No. 2019R00667

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

resources, with a special emphasis on Native American items. I have investigated violations of the Indian Arts and Crafts Act and have become familiar with the tactics and techniques associated with Indian arts and crafts fraudulent activities. Specifically, I have learned how pieces of jewelry are manufactured and then distributed throughout the United States and fraudulently sold as authentic Native American jewelry. I am familiar with the marketing methods used to deceive consumers. I am also familiar with the Native American jewelry market and how jewelry is valued and advertised as made by a particular Native American artisan. I have personally been involved in obtaining federal search and arrest warrants, and I have directed, coordinated, and assisted other law enforcement officers in the executions of these warrants.

3.  The information in this affidavit is based on my personal participation in this investigation and information provided to me by other agents, officers and witnesses, and information gained through my training and experience. Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts I believe are relevant to a fair determination of probable cause to believe that JERRY CHRIS VAN DYKE a/k/a JERRY WITTEN (VAN DYKE) has committed crimes of Misrepresentation of Indian produced goods and products, in violation of Title 18, United States Code, Sections 1159(a) and 2.

4.  Insofar as I have identified individuals in this affidavit, those identifications are made in good faith based on comparisons with Washington state driver's license photographs, as well as photographs maintained in law enforcement databases. In the following paragraphs, I describe communications between various individuals. Except where specifically indicated with quotation marks, the descriptions are summaries of the conversations and are not intended to present a verbatim recitation of the words used by the participants. Insofar as I have included event times in this affidavit, those event times are approximate.

COMPLAINT - 3
*United States v. Van Dyke*
USAO No. 2019R00667

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## SUMMARY OF PROBABLE CAUSE

5. On or about February 26, 2019, USFWS Special Agents (Agents) were assigned to investigate potential violations of the Indian Arts and Crafts Act (IACA) by VAN DYKE, who was believed to be misrepresenting himself as an Indian, specifically, Nez Perce, when selling his artwork. Agents researched VAN DYKE's possible tribal affiliation and determined he was not an enrolled member or Indian artisan with the Nez Perce Tribe, a federally recognized Indian tribe in Idaho.

6. Agents conducted two covert operations, which resulted in the documentation of fraudulent sales and offers for sale, and the purchase of artwork attributed to VAN DYKE at a gallery where his artwork was marketed and sold as Indian produced.

7. On December 20, 2019, agents searched VAN DYKE's residence pursuant to a federal search warrant. Items seized from the residence included research materials for carving, carving tools, design notes, and materials, receipts for the sale of artwork/carvings, and electronic devices.

8. During the search, agents interviewed VAN DYKE, who acknowledged that he had knowledge of and understood some aspects of the IACA and admitted that he was not an enrolled member of the Nez Perce Tribe, or any other Indian tribe in the United States. VAN DYKE also acknowledged that his artwork, which he sold to a gallery, was misrepresented as Indian produced by the gallery.

## INVESTIGATION

9. In February 2019, the Indian Arts and Crafts Board ("IACB") received a complaint concerning VAN DYKE, a/k/a JERRY WITTEN, whose work was being marketed and sold at a gallery as Indian produced by VAN DYKE, but under the name JERRY WITTEN. Agents began investigating these potential violations of the IACA. Agents and IACB personnel researched VAN DYKE's possible tribal affiliation with the Nez Perce Tribe. According to the Nez Perce Tribal Enrollment Department, neither

COMPLAINT - 4
*United States v. Van Dyke*
USAO No. 2019R00667

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

VAN DYKE nor JERRY WITTEN is an enrolled member of the Nez Perce Tribe or an Indian artisan registered with the Tribe.

*First Purchase of VAN DYKE's Artwork at Raven's Nest Treasure*

10. On April 16, 2019, undercover Agents purchased four carved pendants for $1,541.40 from Raven's Nest Treasure (RNT), a gallery in Seattle, Washington. The gallery represented that VAN DYKE (WITTEN) created the pendants, which were marketed and sold as Indian produced. A gallery employee told Agents that VAN DYKE was Native American and provided a copy of VAN DYKE's biography, which listed him as Nez Perce. In addition to the items purchased, RNT offered for sale numerous other carvings attributed to VAN DYKE, which were advertised in the same manner.

*Surveillance of VAN DYKE*

11. Beginning on October 15, 2019, agents conducted surveillance at VAN DYKE's residence, XXXX 2nd Avenue South, Seattle, Washington 98108. During the surveillance, agents observed a vehicle registered to VAN DYKE parked at the residence and observed VAN DYKE coming and going from the residence.

12. On the morning of October 18, 2019, VAN DYKE and his wife, left their residence in VAN DYKE's vehicle. Agents followed the vehicle to Pike Street in Seattle, a location near RNT. VAN DYKE exited his vehicle and began walking in the direction of the gallery.

13. Shortly thereafter, Agents entered RNT and observed VAN DYKE looking at merchandise. VAN DYKE then approached the counter and spoke with a gallery employee. The employee removed an unknown amount of cash from the register and handed it to VAN DYKE. VAN DYKE then handed the employee what appeared to be a pendant, which was similar in design to the pendants that Agents had purchased in an undercover capacity from the gallery on April 16, 2019. The employee then filled out what appeared to be a receipt.

///

COMPLAINT - 5
*United States v. Van Dyke*
USAO No. 2019R00667

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Communications with Raven's Nest Treasure Employees and Owner*

14. Between October 24 and November 26, 2019, undercover Agents communicated with employees of RNT regarding purchasing artwork/pendants attributed to VAN DYKE, which were offered for sale on the gallery's ecommerce website.

15. On the evening of November 13, 2019, undercover Agents and a female civilian, who assisted the Agents, called RNT and inquired about several pendants attributed to VAN DYKE and listed for sale on the gallery's ecommerce website. The employee transferred the call to the gallery owner, who is referred to herein by his initials "MS" to protect his privacy.

16. During the conversation, MS explained that he and VAN DYKE came up with the idea to create and sell pendants, which resembled Aleut masks. MS stated that VAN DYKE had a book with photographs of Aleut masks that he used for inspiration when creating his pendants (during a search of VAN DYKE's residence, discussed below, Agents seized a book showing numerous photographs of Aleut masks). MS explained that he provided VAN DYKE with all the material, woolly mammoth ivory, used to create the pendants. MS later emailed the Agents several photographs of VAN DYKE's pendants. After reviewing the photographs, the Agents recognized one of the pendants in the photos as possibly being the pendant that VAN DYKE handed to the RNT employee on October 18, 2019, when they were conducting surveillance on VAN DYKE.

17. On the evening of November 14, 2019, undercover Agents called RNT to request further information regarding the pendants attributed to VAN DYKE, which the gallery offered for sale on its ecommerce website. Agents spoke with both a gallery employee and MS.

18. The RNT employee explained that the pendants were made with mammoth or mastodon ivory. The employee added that VAN DYKE was a Nez Perce Indian and

COMPLAINT - 6
*United States v. Van Dyke*
USAO No. 2019R00667

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

that she believed VAN DYKE had created all the Aleut mask pendants for sale at the gallery.

19. Agents then spoke with MS who repeated what the gallery employee had told them about VAN DYKE and the pendants he created, which the gallery offered for sale and sold. Additionally, MS repeated the information from his November 13, 2019, phone conversation with the female civilian and Agents about VAN DYKE's inspiration for creating the Aleut mask pendants. Furthermore, MS told the Agents that VAN DYKE was Nez Perce and that they enjoyed a close relationship for years.

*Second Purchase of VAN DYKE's Artwork at Raven's Nest Treasure*

20. On the afternoon of November 22, 2019, undercover Agents called RNT and purchased two Aleut mask pendants for $1,080.00, which the gallery attributed to VAN DYKE and represented as Indian produced. On November 23, 2019, MS emailed the Agents and advised that he had mailed the pendants that day. On November 27, 2019, Agents received the two pendants purchased from the gallery.

*Search of VAN DYKE's Residence and Interview*

21. On December 20, 2019, agents executed a federal search warrant at VAN DYKE's residence. Items seized during the search included research materials for carving, carving tools, design notes and materials, receipts for the sale of artwork/carvings, and electronics devices.

22. After advising VAN DYKE of his Miranda rights, which he waived, Agents interviewed VAN DYKE. When asked if he had knowledge of the IACA, VAN DYKE first answered yes, but later stated no. Agents asked VAN DYKE a second time if he understood the IACA. VAN DYKE went on to explain his understanding of the IACA and referred to the Alaska Silver Hand Program permits as his source of knowledge of the IACA (I am familiar with the Alaska Silver Hand Program; a participating artist must be an Alaska Native, a full-time resident of Alaska, and enrolled in a federally recognized Alaska Native tribe). Additionally, VAN DYKE stated he knew

COMPLAINT - 7
*United States v. Van Dyke*
USAO No. 2019R00667

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

it was illegal to represent and sell artwork as Native American if an individual who produced the artwork was not Native American and not an enrolled member of a tribe.

23. According to VAN DYKE, his mother and his aunt were adopted by the Witten family. VAN DYKE stated that his mother had always told him that she was Native American/Nez Perce, but that she was not an enrolled member of the tribe. Based on his mother's alleged statements, VAN DYKE maintained he believed he is of Nez Perce descent, but admitted that he is not an enrolled member of the Nez Perce Tribe, or any federal or state recognized Indian tribe. He also acknowledged that he had no proof that he has any Nez Perce ancestry.

24. VAN DYKE told agents that he currently sold his artwork only to MS, the owner of RNT, and had done so for approximately ten years. VAN DYKE described MS as his primary point of contact at RNT and their relationship as strictly a business one. VAN DYKE stated that he made, on average, a couple pendants a month, which he sold to the gallery for approximately $50.00 each. VAN DYKE explained that MS provided him, free of charge, the materials that he used to create his pendants, which included woolly mammoth ivory, antlers, animal bones and fossilized walrus ivory.

25. VAN DYKE stated that he knew that RNT advertised his artwork as produced by JERRY WITTEN, a Nez Perce Indian. According to VAN DYKE, MS and his wife had recommended that VAN DYKE use his mother's maiden name, WITTEN, when selling his artwork because they believed it sounded better then VAN DYKE. VAN DYKE stated that RNT was the only place where his mother's maiden name was used when advertising his artwork and was the only place where his artwork was advertised as the product of a Nez Perce Indian.

26. VAN DYKE told Agents that it was not his idea to sell his artwork as Nez Perce or Indian produced. He admitted that he just went along with the gallery doing so and never questioned or confronted MS about misrepresenting his artwork as Indian produced, or that he was a Nez Perce Indian.

COMPLAINT - 8
*United States v. Van Dyke*
USAO No. 2019R00667

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

27. Agents asked VAN DYKE about his artist biography at RNT. According to VAN DYKE, MS repeatedly asked him to create an artist biography. Eventually, VAN DYKE told MS about his purported Nez Perce ancestry, but clarified in his conversations with MS that he was not a Nez Perce tribal member. Agents then showed VAN DYKE his artist biography that RNT gave to its customers. VAN DYKE stated that he had never seen the biography and that he never asked MS to create the biography.

*Interview of the Owner of Raven's Nest Treasure*

28. On December 20, 2019, Agents interviewed MS regarding the marketing and sale of VAN DYKE's artwork at RNT as Nez Perce or Indian produced. MS stated that he was familiar with the IACA and did not knowingly misrepresent artwork sold at his gallery as Native American or Indian produced. MS offered that it was possible he was given a fake artist biography and artwork in the past, but he was not aware of it ever happening. MS denied creating the biographies for the artwork sold at his gallery, stating, "I don't write them up, I get them from them."

29. When agents told MS that VAN DYKE was not an enrolled member of the Nez Perce Tribe, MS replied that VAN DYKE told him he was Nez Perce, but he had never provided him with any proof of his tribal enrollment or status.

30. Agents told MS that VAN DYKE denied creating an artist biography for RNT and that he recounted telling MS about his mother's claimed Nez Perce ancestry, and that he was not an enrolled member of the Nez Perce tribe. MS replied that he did not remember VAN DYKE ever telling him this, and added that something somewhere, or somebody, gave him the idea that VAN DYKE was Nez Perce, which is why he represented VAN DYKE's artwork as such.

31. According to MS, he purchased artwork and pendants from VAN DYKE for $50.00 to $500.00 per item on a regular basis for approximately a decade. MS stated

COMPLAINT - 9
*United States v. Van Dyke*
USAO No. 2019R00667

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

he provided VAN DYKE the fossilized mammoth and walrus ivory used to create the pendants, which he purchased from VAN DYKE.

32. MS then expressed hesitancy about answering any more questions. Before the interview ended, MS stated he had never conspired or agreed with anyone to misrepresent goods sold at the gallery as Indian produced.

*Raven's Nest Treasure's Business Records*

33. On or about February 10, 2020, I reviewed RNT's business records associated with the purchase and sale of artwork attributed to VAN DYKE. These records included a word document containing VAN DYKE's biography, which was similar to the biography the gallery provided when Agents purchased four carved pendants attributed to VAN DYKE. Also included within the records, were emails between the gallery and customers relating to the sale of VAN DYKE's artwork, which was misrepresented as produced by a Nez Perce Indian, internal emails between employees associated with the inventory of VAN DYKE's artwork at the gallery, and approximately eleven receipts for purchases from VAN DYKE of artwork between July 24, 2017 and December 18, 2019, which totaled approximately $675.00.

///
///
///

COMPLAINT - 10
*United States v. Van Dyke*
USAO No. 2019R00667

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**CONCLUSION**

34. Based on the foregoing, I respectfully submit there is probable cause to believe that JERRY CHRIS VAN DYKE, a/k/a JERRY WITTEN, did knowingly aid and abet in the display and offer for sale, and the sale of goods for more than $1,000.00, in a manner that falsely suggested they were Indian produced, Indian products, and the product of a particular Indian and Indian tribe, when in truth and fact, as VAN DYKE well knew, the goods were not Indian produced, Indian products, and the product of a particular Indian and Indian tribe, in violation of Title 18, United States Code, Sections 1159(a) and 2.

SEAN W. HYRONS, Complainant
Special Agent, USFWS

Based on the Complaint and Affidavit sworn to before me telephonically, and submitted electronically, the Court hereby finds that there is probable cause to believe the Defendant committed the offenses set forth in the Complaint.

DATED this __23__ day of November 2021.

BRIAN A. TSUCHIDA
United States Magistrate Judge

COMPLAINT - 11
*United States v. Van Dyke*
USAO No. 2019R00667

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970